# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* E. EMERY, Minor.

UNPUBLISHED
February 15, 2018

No. 339191 and 339278
Delta Circuit Court
Family Division
LC No. 16-000247-NA

Before: MARKEY, P.J., and M. J. KELLY and CAMERON, JJ.

PER CURIAM.

In these consolidated appeals,[1] respondent-mother and respondent-father appeal by right the order terminating their parental rights to the minor child pursuant to MCL 712A.19b(3)(c)(*i*) (conditions at the time of adjudication continue to exist), (g) (failure to provide proper care and custody), and (j) (reasonable likelihood of harm if returned to the parent). We affirm.

## I. FACTUAL BACKGROUND

In September 2016, the court authorized a petition seeking jurisdiction over respondents' 18-month old son, EE. According to the petitioner, law enforcement found both respondents under the influence of drugs. Respondent-father was arrested for possession of analogues, and respondent-mother was arrested on an outstanding warrant. There was no one available to take custody of EE. He was placed with the Department of Health and Human Services (DHHS) for care and supervision. The court took jurisdiction over EE when respondent-father pleaded guilty to the allegations in the petition, and respondent-mother entered a *nolo contendere* plea. Both parents were warned that they needed to make a choice between their son and drugs.

Respondents were ordered to comply with the case service plan, which included refraining from using drugs and completing substance abuse treatment. However, both parents struggled with compliance and continuously tested positive for controlled substances. Both tried and failed twice to complete inpatient substance abuse treatment. Respondent-mother was lodged in jail for approximately three months over the course of the proceedings because her failure to complete a rehabilitation program was a violation of her probation.

---

[1] *In re E Emery Minor,* unpublished order of the Court of Appeals, entered July 21, 2017 (Docket Nos. 339191, 339278).

In June 2017, the court authorized a supplemental petition seeking termination of respondents' parental rights. The petition alleged that respondents failed to rectify the conditions that led to the adjudication, had not participated or benefitted from services offered to them, were unemployed, did not have independent housing, and continued to test positive for controlled substances. Following a hearing, the court terminated respondents' parental rights.

## II. STATUTORY GROUNDS FOR TERMINATION

Respondents both argue that the trial court erred in finding that statutory grounds for termination were established by clear and convincing evidence. We review a trial court's findings that a ground for termination has been established under the clearly erroneous standard. MCR 3.977(K); *In re Moss*, 301 Mich App 76, 80; 836 NW2d 182 (2013). "Clear error exists when some evidence supports a finding, but a review of the entire record leaves the reviewing court with the definite and firm conviction that the lower court made a mistake." *In re Dearmon*, 303 Mich App 684, 700; 847 NW2d 514 (2014). In this case, the thrust of respondents' arguments is that they were not offered sufficient services to secure reunification with their son. Neither respondent-mother nor respondent-father argued in the trial court that their case service plans were insufficient or that they were not provided with adequate services. Therefore, respondents' arguments are unpreserved. *In re Utrera*, 281 Mich App 1, 8; 761 NW2d 253 (2008). We review unpreserved issues for plain error affecting substantial rights, i.e., errors that may have affected the outcome of the proceedings. *Id.* at 8-9.

The trial court may terminate parental rights on a showing of at least one statutory ground by clear and convincing evidence. MCL 712A.19b(3). MCL 712A.19b(3) authorizes the termination of parental rights under the following relevant circumstances:

(c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds either of the following:

(*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

\* \* \*

(g) The parent, without regard to intent, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.

\* \* \*

(j) There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent. [MCL 712A.19b(3)(a), (c)(*i*), (g), and (j).]

"[W]hen a child is removed from the parents' custody, the petitioner is required to make reasonable efforts to rectify the conditions that caused the child's removal by adopting a service plan." *In re Fried*, 266 Mich App 535, 542; 702 NW2d 192 (2005). DHHS has a statutory duty to create a case services plan for a parent, which must include a schedule of services to be provided to the parent. *In re Mason*, 486 Mich 142, 156; 782 NW2d 747 (2010). DHHS has the "responsibility to expend *reasonable* efforts to provide services to secure reunification." *In re Frey*, 297 Mich App 242, 248; 824 NW2d 569 (2012) (emphasis added). However, parents have "a commensurate responsibility . . . to participate in the services that are offered." *Id.*

## A. RESPONDENT-MOTHER

Respondent-mother argues that because she was not provided with services while she was incarcerated, termination of her parental rights was erroneous and premature. She cites to *In re Mason*, 486 Mich 142, in support of this argument. In that case, our Supreme Court held that "[t]he state is not relieved of its duties to engage an absent parent merely because that parent is incarcerated." *Id.* at 152. Over months the incarcerated respondent-father was only given the opportunity to participate in two hearings via telephone. *Id.* at 153, 155. And, because the respondent-father was incarcerated, DHHS did not offer him any services or afford him any opportunity to comply with a case services plan; consequently, the *Mason* Court found that the respondent-father's rights were terminated in error "solely because of his incarceration." *Id.* at 159-160.

Unlike in *Mason*, respondent-mother's parental rights were not terminated because of her incarceration: they were terminated largely because of her failure to address substance abuse addiction. Further, respondent-mother had sufficient opportunity to participate in services, unlike the respondent-father in *Mason*. The case services plan was adopted on October 28, 2016; respondent-mother entered a substance abuse treatment center on January 18, 2017. She was, however, unsuccessfully discharged two weeks later, and because her discharge was a probation violation, she was lodged in jail until February 15, 2017. She entered another substance abuse treatment center on March 6, 2017, but was again unsuccessfully discharged on March 28, 2017. At that point, she was jailed until May 29, 2017. She did not seek any counseling or treatment in the time between her release from jail and the termination trial. Therefore, although respondent-mother did spend approximately three months in jail over the course of these proceedings, she was also afforded ample time to participate in services. Her situation differs from that of the respondent-father in *Mason* who was in prison the entire time and was not afforded the opportunity to take advantage of any services. *Id.* at 159.

Termination of respondent-mother's parental rights was appropriate under MCL 712A.19b(3)(c)(*i*) because more than 182 days had passed since the adjudication, and the conditions that led to the adjudication still existed. It was clear from respondent-mother's own testimony that the same conditions remained—primarily, her struggle with drug use and failure to provide proper care and custody. She had never completed substance abuse counseling or any other requirements of the case service plan and was still addicted to benzodiazepines and Suboxone; she also tested positive for controlled substances within the two weeks preceding the termination of parental rights trial. Furthermore, it was not clearly erroneous for the court to determine that there was no reasonable likelihood that respondent-mother could rectify these

issues within a reasonable time based on her complete lack of involvement in the case services plan.

Termination need only be supported by one statutory ground. MCR 3.977(A)(3); *In re Moss*, 301 Mich App 80, 88. But the court also did not clearly err in finding that MCL 712A.19b(3)(g) and (j) were supported by clear and convincing evidence. "A parent's failure to participate in and benefit from a service plan is evidence that the parent will not be able to provide a child proper care and custody." *In re White*, 303 Mich App 701, 710; 846 NW2d 61 (2014). Also, "a parent's failure to comply with the terms and conditions of his or her services plan is evidence that the child will be harmed if returned to the parent's home." *Id.* at 711.

The evidence presented supported the trial court's finding under MCL 712A.19b(3)(g) and (j). Respondent-mother had recently been released from jail and had no housing or steady income. Most importantly, respondent-mother still had major unaddressed substance abuse issues. Although she expressed a need for a few more months to "get [her] life together," she had not yet completed any of the requirements of the case services plan. Respondent's complete lack of progress on her treatment plan supported termination under both MCL 712A.19b(3)(g) and (j).

## B. RESPONDENT-FATHER

Respondent-father argues that because DHHS did not address other issues such as housing or employment in the services provided, he was deprived of the benefit of the case services plan. Respondent-father cites no legal authority to support his assertion that DHHS was required to offer him any particular combination of services. *Wilson v Taylor*, 457 Mich 232, 243; 577 NW2d 100 (1999) ("It is not sufficient for a party simply to announce a position or assert an error and then leave it up to [the] Court to discover and rationalize the basis for his claims . . . .") (quotation marks omitted). Notably, respondent-father was offered substance abuse treatment and parenting classes, and he was forthcoming in admitting to the court that he did not complete either. It is unclear from respondent-father's demonstrated inability to benefit from those services offered how he would have benefitted from any other services that DHHS may have offered him. His failure to complete or benefit from the services that were offered to him precludes him from arguing that DHHS should have offered him additional services. *Frey*, 297 Mich App at 248. Furthermore, "[t]he time for asserting the need for accommodation in services is when the court adopts a service plan." *Id*. at 247.

Termination of respondent-father's parental rights was proper under MCL 712A.19b(3)(c)(*i*),(g), and (j). Respondent-father was addicted to drugs, homeless, and unemployed at the time of the adjudication. More than 182 days later, respondent-father was still addicted to drugs, did not have independent housing, and did not have a steady income. Accordingly, the court did not clearly err in finding this statutory ground by clear and convincing evidence. *In re Moss*, 301 Mich App at 80. Moreover, failure to participate and benefit from a case service plan is evidence that a parent cannot provide a child proper care and custody and that the child would be harmed if returned to the parent. *White*, 303 Mich App at 710. The court found that it would be hard to find "even a scintilla of evidence" that "even a little part" of the case service plan was completed. The evidence overwhelmingly supports the conclusion that respondent-father did not address his substance abuse issues; therefore, he could not provide

proper care and custody for EE and/or negate the conclusion that there was a reasonable likelihood that EE would be harmed if placed in his care. MCL 712A.19b(3)(g),(j). The trial court did not clearly err in finding these statutory grounds were proven by clear and convincing evidence.

## III. BEST INTERESTS

After a trial court finds that a statutory ground for termination has been proven by clear and convincing evidence, it must terminate parental rights if it finds by a preponderance of the evidence that doing so is in the child's best interests. MCL 712A.19b(5); *Moss*, 301 Mich App at 83. In determining a child's best interests, the court must consider a variety of factors, including "the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantage of a foster home over the parent's home." *White*, 303 Mich App at 713. Other factors a court may consider are "a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption." *Id*. at 714. The child, not the parent, is the "focus" at the best interests stage. *Moss*, 301 Mich App at 87. We review a trial court's decision regarding a child's best interests for clear error. *In re Laster*, 303 Mich App 485, 496; 845 NW2d 540 (2013). A decision is clearly erroneous if, although there is evidence to support it, this Court is left with a definite and firm conviction that a mistake was made. *Mason*, 486 Mich at 152.

### A. RESPONDENT-MOTHER

Respondent-mother failed to support her argument that the court erred in its best interests finding. Her only argument was that if services had been made available to her while she was incarcerated, she would have had a stronger bond with her son. Whether respondent-mother was satisfied with the services she received is not the focus of the best interest inquiry. *Id.* It is not necessary for this Court to discover and rationalize respondent-mother's assertion that termination was not in EE's best interests. *Wilson*, 457 Mich at 243.

Nevertheless, the record shows that the trial court did not err in finding that terminating respondent-mother's parental rights was in EE's best interests. Although it was undisputed that respondent-mother loved her child, testimony established that her long absences throughout the proceedings resulted in a diminished bond with her two-year-old. Respondent-mother had not demonstrated that she could remain sober for any meaningful length of time, including the two weeks leading up to the termination trial. She was unable to provide EE with permanency and stability and had not established stable housing or a steady income. Although she believed that losing her parental rights to EE would have an extremely detrimental effect on herself, the focus is on what was in EE's best interests. The court did not clearly err in terminating respondent-mother's parental rights. *Laster*, 303 Mich App at 496.

### B. RESPONDENT-FATHER

Respondent-father argues that because he had a strong bond with EE and because he believes that adopted children are "much more likely to commit crime" and "much more likely to

have addictive behavior," the trial court erred in finding that termination was in EE's best interests.

Again, the focus at the best interests stage of a termination trial is on the child, not the parent. *Moss*, 303 Mich App at 87. Quality of parent-child contact during parenting time is a valid consideration during the best interest determination. *In re BZ*, 264 Mich App 286, 301; 690 NW2d 505 (2004). The trial court may also consider the likelihood that a child could be returned to the parent's home in the foreseeable future, considering the child's need for a "permanent, safe, and stable home." *Frey*, 297 Mich App at 248-249.

There was evidence that respondent-father loved his child and that the two were bonded. The foster care specialist explained that respondent-father was very affectionate with EE and that he loved him. She described the bond between EE and respondent-father as "overall pretty typical" and agreed that it was characterized by love and affection. Respondent-father testified that he had a bond with his son, which he described as "very playful," and explained how EE showed him things, called him dad, and looked to him for guidance.

However, the foster care specialist also testified that she observed negative behaviors during parenting times such as respondent-father spanking EE, calling him a brat, swearing in front of him, and being unable to handle his temper tantrums. Further, respondent-father completely failed to comply with the case services plan by completing parenting classes, which would have helped him to handle and appropriately discipline EE. He also did not complete substance abuse treatment and continued to use drugs throughout the pendency of the case. He was living with his grandmother, although for how long was unclear, and he did not have steady income. Given this evidence and the fact after nine months respondent-father had shown no improvement, we conclude that the trial court did not clearly err in finding that termination of respondent-father's parental rights was in EE's best interests.

We affirm.

/s/ Jane E. Markey
/s/ Michael J. Kelly
/s/ Thomas C. Cameron